## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY RUSH, aka, LEROY THOMAS, | : | Hon. Joseph H. Rodriguez |
| | : | |
| Plaintiff, | : | Civil Action No. 09-4385 |
| v. | : | |
| | : | |
| MICHAEL WISEMAN, | : | |
| CRISTI CHARPENTIER, | : | |
| MAUREEN KEARNEY ROWLEY, and | : | OPINION |
| THE HONORABLE ANITA B. BRODY, | : | |
| | : | |
| Defendants. | : | |

This matter comes before the Court on motion of Defendant the Honorable Anita B. Brody to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ. P. 12(b)(6). The Court has reviewed the written statements of the parties. For the reasons stated below, Defendant's motion will be GRANTED.[1]

## I. Background

Plaintiff, Larry Rush, is a death row inmate who is incarcerated at S.C.I. Greene. (Compl. at ¶ 2.) Defendant, the Honorable Anita B. Brody (Judge Brody), is a Federal District Court Judge in the Eastern District of Pennsylvania. Plaintiff's Complaint arises from his appearances before Judge Brody in connection with his Petition for a Writ of

---

[1] Only Defendant Judge Brody moves for dismissal. The Court's docket indicates that the other named defendants, Michael Wiseman, Cristi Charpentier, and Maureen Kearney Rowley, were never properly served with the Summons and Complaint in this matter.

Habeas Corpus currently pending in the Eastern District of Pennsylvania under the caption Rush v. Beard, civil action number 08-4843. In the course of adjudicating Plaintiff's Writ, Judge Brody appointed Mr. Michael Wiseman, Chief of the Capital Habeas Unit of the Federal Community Defender Office for the Eastern District of Pennsylvania, to represent Rush on June 8, 2009.[2] Plaintiff's Complaint, broadly construed, alleges that Judge Brody engaged in a conspiracy with Mr. Wiseman and others in the Federal Defender's office to have Plaintiff declared incompetent and thus deprive him of his right to represent himself in his own habeas petition. Because Plaintiff has named a District Court Judge in the Eastern District of Pennsylvania as Defendant, his case has been transferred to this Court in the District of New Jersey.

Plaintiff appeared before Judge Brody after Mr. Wiseman filed a "Petition for a Writ of Habeas Corpus as Next Friend to Larry Rush" ("'Next Friend' Petition") on October 9, 2008. (Compl. at ¶ 11.) See Wiseman v. Beard, 629 F.Supp.2d 488, 488 (E.D. Pa. 2009).[3] The case was docketed as Civil Action No. 08-4843 and was assigned to Judge Brody. See Wiseman, 629 F.Supp.2d at 488. The "Next Friend" Petition filed by Mr. Wiseman asserted that "Mr. Rush is not able to fend for himself, and that [counsel is] duty bound to file the instant petition in order to protect Mr. Rush's right to seek review of his claims for relief." Id. at 489. According to Plaintiff's Complaint, Mr. Wiseman represented in the petition that Plaintiff was mentally incompetent and unable

---

[2] Prior to this appointment, Mr. Wiseman had been representing Plaintiff as "next friend." The Order dated June 8, 2009, removed the "next friend" designation and appointed Mr. Wiseman to represent Plaintiff nunc pro tunc as of October 9, 2008.

[3] Plaintiff's Complaint contains minors errors with respect to the dates that motions were filed and orders were issued in his case. Where Plaintiff's dates are factually inaccurate, the Court has listed the accurate date from the docket proceedings.

to defend himself and that his statute of limitations period was about to expire. (Compl. at ¶ 11.) Describing the petition as "distorted, defective, and defamatory," Plaintiff alleges that Mr. Wiseman filed it after assessing Plaintiff's legal skills and realizing that it would not be in the "financial best interests" of the Community Defender's Office to allow Plaintiff to represent himself. (Compl. at ¶ 10-11.)

On October 31, 2008 Plaintiff filed a Petition with Judge Brody to have the "Next Friend" Petition filed by Mr. Wiseman terminated in order that he could file his own habeas petition and represent himself.[4] (Compl. at ¶ 13.) See also Wiseman, 629 F.Supp.2d at 489 (explaining that the Petition made it clear that Plaintiff Rush did not intend to waive further proceedings and planned to file his own habeas petition, but also noting that Plaintiff had not "to date" filed his own habeas petition despite being told by the Court that he could do so). On November 24, 2008, Plaintiff motioned to proceed *in forma pauperis* and requested a stay of execution. (Compl. at ¶ 19.) On November 25, 2008, the Court granted his request to stay execution, and on December 9, 2008 it granted his request to proceed *in forma pauperis*.

According to his Complaint, on December 5, 2008, Judge Brody also ordered a hearing for January 15, 2009 [rescheduled for January 29, 2009] to determine whether or not Mr. Wiseman had standing to assert "next friend" status and whether Plaintiff was competent to proceed *pro se*. (Compl. at ¶ ¶ 19-21.) In his Complaint, Plaintiff also contends that "during the month of December 200[8], Defendant Wiseman called

---

[4] This petition is titled "Petition for Order Terminate [sic] Petition for a Writ of Habeas Corpus Submitted by the Capital Habeas Corpus Unit of the Federal Community Defender Office for the Eastern District of Pennsylvania on Behalf of Larry Rush, and Issuance of Order Relieving Respondents of their November 24, 2008 Expiration Date to File a Response to the Terminated Petition for Habeas Corpus."

[Judge] Brody at her . . . place of residence and informed her that because he does not have any real personal relationship with Plaintiff he's going to need her assistence in helping him establish that Plaintiff is incompetent." (Compl. at ¶ 20.) According to Plaintiff, Judge Brody "told Defendant Wiseman to file a motion concerning the matter." (Compl. at ¶ 20.) Plaintiff additionally asserts that, "due to the encouraged and secret motion filed by Defendant Wiseman," Defendant Brody ordered a new hearing date and also scheduled a clandestine meeting in chambers that included Mr. Wiseman. (Compl. at ¶ 21.) Although Plaintiff was not present at this meeting, he contends that Judge Brody assured those present that she would not address the Plaintiff's motion to terminate Mr. Wiseman's "next friend" status and would help them establish Plaintiff's incompetence. (Compl. at ¶ 21.)

At the rescheduled hearing, which Plaintiff attended via video-conferencing, Plaintiff alleges that Judge Brody "adher[ed] to her promise," by failing to address the "next friend" question, and determined that Plaintiff should be examined by a court-appointed psychiatrist in order to assess Plaintiff's competency to represent himself in his federal habeas petition. (Compl. at ¶ 22.) See also Wiseman, 629 F.Supp.2d at 490 (noting that the Court explained to Plaintiff that in order for Plaintiff to defend himself the Court would have to make a competency finding).

On February 2, 2009 Judge Brody appointed Dr. Robert Mark Wettstein to evaluate Plaintiff's competency to represent himself in his habeas corpus proceedings. (Compl. at ¶ 25.) In response, on February 9, 2009, Plaintiff filed a motion opposing Judge Brody's order that he be examined for competency. (Compl. at ¶ 24.) This motion also asked that the court address his own motion to terminate the "next friend" status of

Mr. Wiseman.[5] (Compl. at ¶ 24.) On February 9, 2009, Plaintiff also sent a letter to Judge Brody informing her that he would not submit to the psychiatric evaluation by Dr. Wettstein. (Compl at ¶ 25, Exhibit E.) On February 18, 2009, the Court denied Plaintiff's motion. (Compl. at ¶ 26.) In response to Judge Brody's denial of his February 9, 2008 motion, Plaintiff filed a motion in the District Court to stay the order pending his appeal, which was denied by Judge Brody on March 9, 2009. (Compl. at ¶ 31.) Plaintiff challenged the ruling by filing an interlocutory appeal with the Third Circuit Court of Appeals. (Compl. at ¶¶ 33-35.) The Third Circuit dismissed his appeal on June 4, 2009 and also dismissed his petition for an en banc hearing on the issue. (Compl. at ¶ 37.) See also Wiseman, 629 F.Supp.2d at 489-90 (explaining that Plaintiff Rush filed an appeal of Judge Brody's February 2, 2009 Order appointing Dr. Wettstein to evaluate Plaintiff, which was denied by the Third Circuit for lack of appellate jurisdiction on June 5, 2009).

Plaintiff's Complaint alleges that Mr. Wiseman again contacted Judge Brody during May of 2009. (Compl. at ¶ 36.) According to Plaintiff, Mr. Wiseman asked Judge Brody to urge Dr. Wettstein to evaluate Plaintiff immediately so Plaintiff's appeal of the psychiatric evaluation would be deemed moot. (Compl. at ¶ 36.) Plaintiff alleges that Judge Brody then telephoned Dr. Wettstein at his office and encouraged him to evaluate Plaintiff immediately. (Compl. at ¶ 36.) On May 11, 2009, Dr. Wettstein arrived at State

---

[5] This motion is titled "Motion to Rescind January 29, 2009 Ruling for Petitioner to be Examine [sic] by a Psychiatric [sic] for Competency; To Address the Petitioner's October 27, 2008 Motion to Terminate Petition for a Writ of Habeas Corpus Filed by Mr. Wiseman, and for Order Granting the Petitioner the Allotted Time, Requested in his Motion for Stay of Execution, To File his Petition for a Writ of Habeas Corpus Independently."

Correctional Institution at Greene, where Plaintiff is housed, but Plaintiff refused to leave his cell to participate in the psychiatric interview. (Compl. at ¶ 36.) See also Wiseman, 629 F.Supp.2d at 489-90 (explaining that Dr. Wettstein went to SCI Greene and attempted to evaluate [Plaintiff] Rush, but Rush refused to leave his cell to conduct the psychiatric interview).

On June 8, 2009, Judge Brody issued an Order nunc pro tunc appointing Mr. Wiseman as counsel for Plaintiff and amended the petition to eliminate the words "next friend." (Compl. at ¶ 38.); see also Wiseman, 629 F.Supp.2d at 490 (holding that the appointment was warranted because the court could not assess Plaintiff's competency to represent himself after he refused to be evaluated). Plaintiff alleges that Judge Brody was "being totally dictated be [sic] her coconspirator, e.g., Defendant Wiseman" in issuing this order. (Compl. at ¶ 38.) Plaintiff also contends that Judge Brody subsequently ordered Plaintiff to file all his future motions through his appointed counsel, Mr. Wiseman. (Compl. at ¶ 41.)

According to Plaintiff's Complaint, he has filed subsequent appeals in the Third Circuit and also plans to petition for a Writ of Certiorari to the United States Supreme Court. (Compl. at ¶¶ 44-45.) Since filing his Complaint, Plaintiff has also filed motions with this Court for a Preliminary Injunction and a Temporary Restraining Order against the Defendants, including Judge Brody.

Plaintiff has sued Judge Brody in both her individual and official capacity under 42 U.S.C. §§ 1983, 1985, and 1986. He claims that Judge Brody participated in a conspiracy to deprive him of his state and federal constitutional rights to self-representation, and from having access to the federal courts in his own voice. (Compl. at

¶ ¶ 52-56.) He also claims that this conspiracy led to various direct violations of his due process rights and his First, Fifth, and Fourteen amendment rights to independent access to the courts. (Compl. at ¶¶ 55-58.) In addition, he asserts direct violations of his Eighth amendment right to be free of cruel and unusual punishment. (Compl. at ¶¶ 65-67.) Finally, Plaintiff alleges a tort claim for intentional infliction of emotional distress.

Now before the Court is Judge Brody's Motion to Dismiss for failure to state a claim upon which relief may be granted. At issue is whether Plaintiff's claims against Judge Brody are barred by sovereign and judicial immunity.

## II. Standard of Review

Under 28 U.S.C. § 1915, which governs proceedings filed *in forma pauperis*, the Court must examine the merits of the claims asserted and must dismiss all or part of an action which fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Section 1915 explicitly requires dismissal of claims for monetary relief brought against a defendant who is otherwise immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(iii). The applicable standard of review under 28 U.S.C. § 1915 is otherwise the same as the standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). Although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct.

1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Id. (internal citations omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration. See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). These allegations and inferences must be viewed in the light most favorable to the plaintiff. Id. However, the Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")).

It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007).

Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

## III. Analysis

Plainitiff explicitly seeks injunctive relief, several declaratory judgments, and a restraining order against Judge Brody. (Compl. at ¶¶ A, C, F, G.) Plaintiff does not name Judge Brody in his damages claim (Compl. at ¶¶ H-I); however, he seeks attorney's fees from all defendants pursuant to 42 U.S.C. § 1988. (Compl. at ¶¶ J-K).

### A. Construing a *Pro Se* Complaint

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, pleadings are to be liberally construed, and this is especially true in cases involving *pro se* litigants. According to the United States Supreme Court, a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardue, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). See also, Abdul-Akbar v. McKelvie, 239 F.3d 307, 322 (3d Cir. 2001); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) (citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (holding that when a plaintiff files a complaint *pro se*, the pleadings must be liberally construed and the Court "must apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name").

With the standard above in mind, the Court will attempt to determine what claims Plaintiff seeks to bring against Judge Brody. Plaintiff's claim against Judge Brody is for equitable relief in her official and individual capacity and brings his constitutional claims directly and pursuant to 42 U.S.C. §§1983, 1985, and 1986. He does not name the

particular subsections of Sections 1983, 1985, and 1986 under which he brings suit. Thus, the Court is left to construe his claims.

Section 1983 offers private citizens a means to redress violations of federal law committed by state law officials. To state a claim for relief under 1983, a plaintiff must allege, first, a violation of a right secured by the Constitution or laws of the United States, and, second, that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). In the present case, Judge Brody is a federal, rather than state, employee. As such, a Section 1983 claim is inapposite. However, because Plaintiff proceeds *pro se* and the Third Circuit has declared that a Bivens claim is the "federal counterpart" to a § 1983 action, Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 534 U.S. 1049, 125 S.Ct. 868, 160 L.Ed.2d 769 (2005); Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001), the Court will treat Plaintiff's claim as a Bivens claim. See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that plaintiff may seek money damages from individual federal officers for their alleged violations of the plaintiff's rights arising under the Fourth Amendment of the Constitution).

Plaintiff also appears to allege a civil rights conspiracy claim under Sections 1985 and 1986. Plaintiff's complaint does not specify which subsection of 42 U.S.C. § 1985 Judge Brody has allegedly violated.[6] Because Plaintiff has asserted that the conspiracy

---

[6] Subsection 1985(1) applies to conspiracies that interfere with the duties of an officer of the United States, while section 1985(2) prohibits conspiracies intending to obstruct justice and intimidate witnesses. Galvani v.

violated his civil rights, the Court will assume that Plaintiff proceeds under section 1985(3). Sections 1985 and 1986 are closely related, and the prerequisite to a cognizable § 1986 claim is the existence of a conspiracy prohibited by §1985. See Robison v. Canterbury Vill., Inc., 848 F.2d 424, 431, n. 10 (3d Cir. 1988); Pearson v. Miller, 988 F. Supp. 848, 859 (M.D. Pa. 1997 ("No claim can be maintained under section 1986 unless a cause of action has been established under section 1985."). Once a § 1985(3) conspiracy is established, § 1986 liability attaches only if a plaintiff demonstrates that a defendant knew about the conspiracy and had the power to prevent it. See Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994); Conroy v. City of Phila., 421 F.Supp.2d 879, 888 (E.D. Pa. 2006). Like Plaintiff's §1983 claims, the Court will also treat his conspiracy claims under §1985(3) and §1986 as Bivens-styled claims. See Banks-Bennett v. Bureau's Organized Crime and Vice Control Unit, No. 1:08-cv-00280, 2009 WL 1277743, at *4 (M.D. Pa. Apr. 30, 2009) (treating a *pro se* plaintiff's section 1985(3) claim against a federal officer as a Bivens claim).

In additional to constitutional claims, Plaintiff has also alleged various tort claims in his complaint. It is unclear whether these claims are directed at Judge Brody. However, as set out below, the Court need not reach the substance of Plaintiff's many constitutional and tort claims because they are barred by sovereign and judicial immunity.

## B. Sovereign Immunity

From the outset, it is not clear from Plaintiff's Complaint what claims he brings

---

Pennsylvania, No. 1:08-CV-0393, 2008 WL 4821748, at *3 (M.D. Pa. Nov. 4, 2008). Finally, section 1985(3) provides a remedy for conspiracies to violate civil rights. Id.

against Judge Brody in her official capacity and what claims he brings against her in her personal capacity. To the extent Plaintiff seeks damages from Judge Brody in her official capacity, his suit is barred by sovereign immunity. The United States is immune from suit for damages absent an explicit waiver of sovereign immunity. <u>Block v. North Dakota ex rel. Board of University and School Lands</u>, 461 U.S. 273, 280, 103 S. Ct. 1811, 75 L.Ed.2d 840 (1983). This immunity, "is jurisdictional in nature." <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L.Ed.2d 308 (1994). It extends to government agencies and employees sued in their official capacities. <u>See Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996). Congress has not waived sovereign immunity for damages claims. <u>See, e.g.,</u> <u>Clark v. Library of Congress</u>, 750 F.2d 89, 103-04 (D.C. Cir. 1984). In the present case, Judge Brody is a federal employee. Thus any damages claims against her in her official capacity are barred by sovereign immunity.[7]

### C. Judicial Immunity from Suit for Damages

Plaintiff has also sued Judge Brody in her individual capacity for alleged constitutional and tort violations. Because judicial immunity bars most individual suits for damages against judges acting in a judicial capacity, the Court must determine whether judicial immunity protects the acts which form the basis for Plaintiff's individual capacity suit against Judge Brody. Though Plaintiff does not specifically ask for monetary damages from Judge Brody, the Court, recognizing Plaintiff's *pro se* status, will analyze whether Plaintiff may state such a claim.

It is well-settled that a judicial officer in the performance of his or her duties has

---

[7] Though Plaintiff Rush's complaint names Judge Brody in her official capacity, it does not appear that he has sued her for damages. Even a liberal reading of the complaint supports this conclusion.

absolute immunity from suit for damages and will not be liable for his or her judicial acts. See Azubuko v. Royal, 443 F.3d 302 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Further, for the purposes of immunity analysis, Bivens actions are not distinguished from civil rights suits brought against state officials pursuant to 42 U.S.C. § 1983, and, thus, the immunity principles applied in Section 1983 actions apply with equal force in the case of a federal official. Harlow v. Fitzgerald, 457 U.S. 800, 818 n. 30, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has identified important policy reasons for this broad grant of judicial immunity. Although the Court recognizes that "unfairness and injustice to a litigant may result on occasion, it is a general principal of the highest importance to the proper administration of justice that judicial officer, in exercising [vested authority] shall be free to act upon his [or her] own convictions, without apprehension of personal consequences." Mireles, 502 U.S. at 10. As the Court explains, "[i]f judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous and vexatious, would provide powerful incentive for judges to avoid rendering decisions likely to provoke such suits." Forrester v. White, 484 U.S. 219, 226, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Further, most judicial mistakes and misconduct are open to correction through ordinary mechanisms of review, and thus litigants have an alternate means of protecting themselves against judicial error. See id. at 227.

There are only two circumstances when a judge's immunity from civil liability may be overcome. Mireles, 502 U.S. at 11. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity." Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000) (citing Mireles, 502 U.S. at 11). "Second, a

judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (citing Mireles, 502 U.S. at 12). These exceptions to the doctrine of judicial immunity are narrow in scope and infrequently applied. See Ray v. Twp. of Warren, No. 07-2812, 2008 WL 111265, at *2 (D.N.J. Jan. 10, 2008).

To determine whether an act complained of is judicial in nature, the court uses a functional approach that examines whether the act is normally performed by a judge and whether the parties dealt with the judge in his judicial capacity. See Gallas, 211 F.3d at 768-69 (citing Stump v. Sparkman, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). Judicial functions include determining the admissibility, reliability, and relevance of evidence while presiding over a case, and making decisions on the case before him or her. See Trueman v. City of Chichester, No. 04-5085, 2005 WL 2644995, at *1 (E.D. Pa. Oct. 12, 2005), aff'd, 289 Fed. Appx, 529 (3d Cir. 2008) (not reported). A "[l]ack of formality" does not convert a judicial act into a non-judicial one. Stump, 435 U.S. at 360 (rejecting plaintiff's argument that approval of sterilization petition was not a judicial act because the petition was not given a docket number, was not placed on file with the clerk's office, and was approved in an ex parte proceeding without notice or a hearing). In contrast to decisions related to a case, "administrative decisions, even though they may be essential to the functioning of the court, have not...been regarded as judicial acts." Forrester, 484 U.S. at 228. (finding that a judge's decisions to demote and discharge a court employee are administrative acts not protected by judicial immunity).

When assessing conduct by a judge, allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity. See id. at 227. Thus, the Court looks not to the motive or correctness of the

14

judge's specific decision but rather to the "particular act's relation to a general function normally performed by a judge." Gallas, 211 F.3d at 769 (finding that a judge's order releasing a court record to the public was "undeniably" a judicial act).

Further, immunity exists where it is alleged that the judge is acting as part of a conspiracy. See Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L.Ed.2d 185 (1980) (finding that a judge who entered an injunction as part of an alleged conspiracy to deprive the plaintiff of property was "properly dismissed" from the suit on immunity grounds); see also McArdle v. Tronetti, 961 F.2d 1083, 1085-86 (3d Cir. 1992) (finding that persons who are immune from § 1983 liability by virtue of "their function in the judicial process," must also be immune from § 1983 liability "for conspiring to do those acts"). Judicial immunity extends to situations where a plaintiff alleges that a judge took his or her actions as a result of a conspiracy between the judge and other lawyers in the case. See Shahin v. Darling, 606 F.Supp.2d 525, 541 (D. Del. 2009) (citing Dennis, 449 U.S. 24); see also Serra v. Salus, No. 00-4344, 2000 WL 1886572, at *5-*6 (E.D. Pa. Dec. 15, 2000) (dismissing conspiracy claims against a judge on basis of judicial immunity); Currier v. Borough of Norristown, No. 94-4613, 1995 WL 455855, at *1 (E.D. Pa. July 28, 1995) (same); Cohen v. Duane, Morris, & Heckscher, No. 89-4424, 1989 WL 114695, at *1 (E.D. Pa. Sept. 29, 1989) (same).

In the present case, Plaintiff's allegations do not fall within the first exception to judicial immunity because Judge Brody's alleged conduct is undeniably judicial in nature. Plaintiff contests the orders and decisions issued by Judge Brody during the course of his habeas case, and thus the contested conduct falls squarely within the realm of protected judicial acts. Plaintiff specifically contests Judge Brody's decisions ordering Plaintiff to

undergo a competency exam, allowing Mr. Wiseman to assert "next friend" status, and appointing Mr. Wiseman as counsel nunc pro tunc. He further disputes Judge Brody's denials of his various motions related to these events. However, as in Gallas, where the Court determined that issuing an order was undeniably a judicial act, Judge Brody's acts of issuing orders and ruling on motions are likewise undeniably judicial in nature.

Plaintiff's allegation that Judge Brody's decisions were undertaken as part of conspiracy with Mr. Wiseman to deprive him of his right to represent himself in federal court does not transform her judical acts into non-judicial acts. He avers that Judge Brody engaged in secret communications about Plaintiff's case outside the courthouse setting and that Judge Brody issued judicial orders at the instruction of Mr. Wiseman. However, as in McArdle and Shahin, allegations that a judge issued decisions as part of a conspiracy with other lawyers in the case is not sufficient to overcome judicial immunity because the very acts animating the conspiracy are actions normally performed by a judge.[8]

---

[8] The Court also notes that if Plaintiff's claims regarding Judge Brody's alleged involvement in a conspiracy were not barred by judicial immunity, the allegations fail to state a claim upon which relief can be granted under 42 U.S.C. §1985(3) because there are no factual allegations suggesting racial or other class based invidious discrimination behind the alleged conspirator's actions, which are required to sustain a §1985(3) claim. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); Kush v. Rutledge, 460 U.S. 719, 724-26, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). Furthermore, Plaintiff's conclusory allegations that Judge Brody participated in a conspiracy are insufficient to state a claim and provide another basis for dismissal of the complaint. Plaintiff alleges "upon information and belief" that Judge Brody engaged in private telephone conversations with both Mr. Wiseman and Dr. Wettstein as part of a conspiracy to have him declared incompetent. However, he offers no substantiating facts and thus his allegations do not meet the notice pleading requirements or the pleading requirement for conspiracy. See Mayercheck v. Judges of Pa. Sup. Ct., No. 08-1112, 2009, WL 2524755, at *13-14 (W.D. Pa. Aug. 17, 2009) (finding that Plaintiffs allegations that a state judge had participated in ex parte communications with an attorney and another defendant during his divorce proceedings alleged insufficient facts and did not meet the "particularized" showing for alleging a conspiracy).

The conduct alleged in the complaint also falls outside the scope of the second exception to judicial immunity. The "absence of jurisdiction" exception to judicial immunity applies only where the judicial acts in question were taken in the *clear absence* of all jurisdiction. Gallas, 211 F.3d at 769 (emphasis added). In contrast, absolute immunity still protects acts taken in mere excess of jurisdiction. Id.; see also Stump, 435 U.S. at 359 (rejecting an "unduly restrictive" view of a judges jurisdiction); Figueroa v. Blackburn, 208 F.3d 435, 444 (3d Cir. 2000) (holding that a judge does not act in clear absence of all jurisdiction when entering an order at least colorably within the jurisdiction of his or her court even where a court rule or other procedural constraint required another judge to act in the matter).

In the present case, Judge Brody had jurisdiction to hear an action properly filed under the Habeas Corpus Statute, 28 U.S.C. § 2254. A very liberal reading of Plaintiff's Complaint alleges that Judge Brody did not have jurisdiction to entertain the Petition filed by Mr. Wiseman because Mr. Wiseman did not have standing to assert "next friend" status. Plaintiff also suggests that Judge Brody did not have jurisdiction over his case because he has a constitutional right to representation. He further alleges that she did not have the jurisdiction to order a competency exam or appoint Mr. Wiseman as counsel.

For the most part, Plaintiff has erroneously framed his disagreement with Judge Brody's decisions as proof of her lack of "jurisdiction." The only allegation by Plaintiff which even arguably addresses the question of Judge Brody's jurisdiction over his case is his contention that Mr. Wiseman did not have standing to file the habeas Petition on behalf of Plaintiff in the first place. It is true that where standing is lacking, the federal

courts lack the power to grant habeas relief. See In re Zettlemoyer, 53 F.3d 24, 26 (3d Cir. 1995). But for the purposes of the judicial immunity inquiry here, Judge Brody's alleged failure to address Mr. Wiseman's standing to assert "next friend" status would at most amount to retention of jurisdiction in error. Such an error would not amount to a *complete absence* of jurisdiction as required to invoke the exception to judicial immunity.

Plaintiff's "next friend" argument and his remaining allegations indicate that he strongly disagrees with Judge Brody's decisions throughout his case. Principally, he believes that he has a constitutional right to represent himself; he should not be required to submit to a competency exam; Mr. Wiseman does not meet the legal criteria of a next friend; and should not have been appointed as Plaintiff's counsel. However, even taken together, these points of dispute do not divest Judge Brody of her statutorily authorized jurisdiction over the Plaintiff's habeas case. At most, Plaintiff claims allege that Judge Brody has applied the laws erroneously during the course of his case. Plaintiff suit, therefore, is of the very type that judicial immunity bars. Though Plaintiff may challenge Judge Brody's rulings through the normal mechanisms of review as he appears to be doing, he may not sue Judge Brody for damages because he disagrees with her decisions in his case.

Thus, for the reasons stated above, had Plaintiff asked for damages against Judge Brody in either a Biven's suit or a tort claim, such claims would be barred by judicial immunity because Judge Brody's conduct in issuing orders and disposing of motions are judicial acts and were not taken in the clear absence of jurisdiction.

### D. Judicial Immunity from Suits for Equitable Relief

The Court next considers whether Plaintiff's requests for equitable relief are

barred by judicial immunity or otherwise must be dismissed. Though Plaintiff does not specifically ask for damages from Judge Brody, he does pray for various forms of equitable relief, including preliminary and permanent injunctions against Judge Brody, a temporary restraining order removing Judge Brody from his case, a special order transferring the case to the District of New Jersey, and several declaratory judgments related to his case. This section will address Plaintiff's requests for injunctive and declaratory relief.

The Supreme Court has held a cause of action for injunctive relief may be maintained against federal officers or the federal government. See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). However, immunity principles still apply, and, except in very limited circumstances, federal judges are immune from suits for injunctive relief. In 1996, Congress amended 42 U.S.C. §1983 to provide that "injunctive relief shall not be granted" in an action brought against a judicial official for an act or omission taken in such officer's judicial capacity...unless a declaratory decree was violated or declaratory relief was unavailable." See Azubuko v. Royal, 443 F.3d 302, 304 (3d Cir. 2006) (citing 42 U.S.C § 1983); see also 42 U.S.C. § 1983 (abrogating in part Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (which held that judicial immunity is not a bar to prospective injunctive relief against a judge acting in his or her judicial capacity)). The Third Circuit has recently determined that the amendment to Section 1983 also applies to federal judges. See Azubuko, 443 F.3d at 303-04 (citing Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (dismissing on grounds of judicial immunity a Bivens suit against a federal judge where the Plaintiff sought, in addition to damages, the reversal of two cases and an

injunction preventing the judge from presiding over any future cases).

The 1996 amendment does not alter case law regarding the availability of declaratory relief against judicial officers. See Brandon E. ex rel. Listenbee v. Reynolds 201 F.3d 194, 197-98 (3d Cir. 2000).[9] However, a declaratory judgment is inappropriate solely to adjudicate past conduct. Gruntal & Co., Inc., v. Steinberg, 837 F.Supp. 85, 89 (D.N.J. 1993). As such, the Third Circuit has denied the request for declaratory relief where the litigant "is not seeking declaratory relief in the true legal sense." Corliss v. O'Brien, 200 Fed Appx. 80, 84-85 (3d Cir. 2006) (not reported). In Corliss, the plaintiff's complaint contained requests for declaratory relief asking for declarations that the plaintiff's constitutional rights had been violated and that the defendants' conduct violated the penal laws of Pennsylvania. Id. at 84, n. 4.

In the present case, Plaintiff's request for injunctive relief is barred by judicial immunity and his request for declaratory relief must also be denied. The Third Circuit has applied the 1996 amendment to §1983 to suits for injunctive relief brought against federal judges, and, thus, the amendment applies to Judge Brody, a federal judge. Under Third Circuit law, injunctive relief is not available against federal judges unless a declaratory decree has been violated or declaratory relief is unavailable. In this case, a declaratory decree has not been violated and declaratory relief is not unavailable per se. However, Plaintiff, like the plaintiff in Corliss, has not asked for declaratory relief in the legal sense. Instead, like the plaintiff in Corliss he asked for various declarations that

---

[9]The amendatory language to § 1983 does not expressly authorize suits for declaratory relief against judges. Rather, it recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate. See Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, 197-98 (2000).

Judge Brody conspired with other defendants to violate his state and federal constitutional rights through her rulings and decisions. Thus, Plaintiff's claim for injunctive relief is barred by judicial immunity because a declaratory decree has not been violated and declaratory relief is not unavailable. Further, because Plaintiff has not pleaded a legally cognizable claim for declaratory relief, his request for such relief is also denied.

### IV. Conclusion

For the reasons stated above, Plaintiff's Complaint is dismissed as to the Honorable Anita B. Brody.

An appropriate Order shall issue.

Dated: April 27, 2010

Hon. Joseph H. Rodriguez,
United States District Judge

21